Good morning, Your Honor. Jonathan Easting from the State Appellate Defender on behalf of Mr. Bruce. Your Honor, this is an actual innocence challenge to a conviction of a 1993 murder. The case has some history. It was previously ordered to be filed by the Illinois Supreme Court and then this Court and then it was dismissed on the State's motion and second stage proceedings. Your Honor, there's two key new affidavits here that are material non-cumulative evidence that are so compelling as to change the result on a retrial. The most important one is probably Courtney Donaldson. Courtney Donaldson has come forward years after the fact and says that he was in fact the actual shooter and said, my client, Dwayne Bruce, was not involved in this offense at all. Can you turn around up here and say that it's disproven by the record because he says he shot with a .40 caliber when in fact the evidence is the victim was killed with a .38 caliber? Yes, Your Honor. So what's your answer to that? Well, first I would say we need to reject the reasoning of the court below which says, well, Donaldson's not credible at this point of second stage proceedings because of this contradiction about the fact that he was dead. So I would say we need to reject the reasoning of the court below. So we'll take credibility and take that off the table. Well, I would suggest that the only importance of this is here's one possible fact that an attorney could use in the future to impeach Donaldson with an inconsistent statement, and that's a credibility determination, especially when weighed against the credibility prompts of the State's cumulative misrepresentation. It's not a credibility issue. There's no question that the victim was killed with a .38 caliber weapon. That's not a question of credibility as to whether he shot with a .40 caliber. It's a question as to whether the record disproves his affidavit. Well, the record on the, I would submit it is a credibility question for the following reason, Your Honor. Donaldson is 18 years old at the time. Everybody agrees that this is a revolver that is used. I would not be surprised if an 18-year-old having some revolver that's got passed to him somehow is simply mistaken as to what the make and model of the revolver is. And I would also point out that the evidence he used. Is there anything in his affidavit where he says, because I was 18, I wasn't familiar with firearms as much as I am now? No, Your Honor, but affidavits are never that comprehensive. This is the kind of reason why we have evidentiary hearings. Instead of speculating what he would or would not testify to as to the nature of the firearm, we get the guy on the stand, we ask him, and this credibility stands and falls with that. And I would also note that his credibility is bolstered by the Sears affidavit, who says, as Donaldson effectively does, that my client's not even in this car at all. The second issue the State's going to bring up with Donaldson is that the affidavit notably doesn't say the defendant was absent from the scene. No, it says. Which would appear to. Robert Sears affidavit says he's not present. Donaldson doesn't use those magic words, not present. Donaldson says he's not involved. However, in the context of this case, not involved effectively means not present, because this is a group of individuals that are driving around in this car. There's no way for somebody to be in this car and not involved in the case in the colloquial sense of term. I'd also suggest that this is one reason why we construe these, you know, these cases to be, you know, not present. And I would point out that this is not a case where the evidence of a gun is particularly certain. Not only are we dealing with the single fragmented round, but, you know, there's all the State's efforts to try to have, you know, rather than a single    identify this gun that's recovered from a car Bruce is in months later as the gun used in the offensive. But that's not the case here. The question is, during the course of the trial, was the fragment identified as coming from a .38 caliber weapon? The .48 ballistics expert identified it as a .38 special round, Your Honor. All right. So if it's a .38 special round, then it can't come from a .44 caliber weapon. It would be unusual. It would be highly unusual. Yeah. It just can't. But... I'm... What about the SEALS affidavit? Is there anything in the record that can discredit the SEALS affidavit? Well, I think that the answer to that question is for the State to file an answer. Then we go to a hearing. If they want to try to discredit the affidavit... No, no, no. ...we can use a second bill of questions later on. The SEALS affidavit has to be taken as true unless it is contradicted by the record below. Now, the question is, is there anything in the record below that contradicts the SEALS affidavit itself? Well, Your Honor, this is where I point to Ortiz. That talks about how the contradiction between the new witness's affidavit that the defendant wasn't present and the occurrence witness testimony at trial means, in that case, that Mr. Ortiz... I mean, is there any evidence in the record that SEALS wasn't there? Your Honor, I believe Cherry placed the SEALS in the car consistently. Mind you, Cherry is so erratic as to who she does place in this car. At one point, she has eight people in the station wagon. A couple of them she ends up dropping out because that's not a credible story. Cherry recanted almost everything other than the fact she never recanted that she saw the gun and shot the defendant. Yes, she has recanted some of the State's key cooperation. She's recanted her testimony that this was the gun used, and I've noted trial. There was all sorts of problems with this gun used. The handle color didn't match. The State, in closing, comes up with this theory that there must have been an aftermarket handle of a different color put on. She's recanted this identification of the jewelry, which is another thing that is somewhat questionable at trial because the victim's family describes that he always wore this chain with an anchor on it and the jewelry that's purportedly... But the defendant could have been convicted solely on her testimony that she identifies him as the shooter and she was present at the scene. Well, Your Honor... I mean, we have plenty of cases like that, and isn't our standard on an actual innocent second successive post-conviction petition, our standard is total vindication or exoneration? There's two questions there. First of all, Your Honor, as to whether the fact that we could theoretically under Jackson's standards still say the evidence is convict, Illinois Supreme Court in all these cases, I think Coleman might have the strongest language on it, says the inquiry here is not the same as sufficiency of the evidence. What we're doing is predicting what a jury's going to likely do with all these new facts on retrial. And if we say that jury would likely acquit, then we go to a retrial. It's not that the evidence is insufficient. Now, this question of total vindication has been coming up in and out of the opinions for years. I've never been able to find the way to square it with a Washington standard the Illinois Supreme Court has put out, to square it with Coleman that the Illinois Supreme Court has put out. Where this language comes from, it comes from the decision of a panel of this Court talking about the DNA statute, which has, you know, this different actual innocence language in it. That one panel that later got reversed on this very point by the Illinois Supreme Court decided to go into the law with malicious prosecution torts and pull that out. We're not claiming actual innocence to a malicious prosecution, give us immediate civil life, civil relief standard. We're saying give this guy a chance to argue that he should get a new trial and a chance to get out of prison before his sentence is up. Okay. So I'm reading from People v. Sanders, and the question is, is whether the new evidence is of such a conclusive character that it would probably change the result on retrial. So how does this newly discovered evidence change, would change, are you arguing that it would probably change the result on retrial? It is certainly so compelling it would probably change the result on retrial. Starting with the Donaldson affidavit, he says he was the actual shooter. My client is convicted on a theory that he was the actual shooter. Donaldson says my client wasn't involved. The State's theory of this case is that, you know, my client was the single most maxly person involved. Even if we place Donaldson aside, the Illinois Supreme Court, remember the case before, just had Seals' affidavit. Seals says my client's not present at all. There's no theory by which my client could not be present and still have somehow committed this crime. So if Donaldson's affidavit is not considered, you still believe that there's conclusive, the evidence is of such a conclusive character that it would probably change the result on retrial? Yeah. Even if we place Donaldson's affidavit aside, the Illinois Supreme Court, based on the Seals' affidavit, previously remanded this case, and I think it would have been sufficient. But we don't place the Donaldson affidavits aside. We look at what it means and what a jury is likely to do with those facts. This Court's prior order remanding the case says we look at all the old together. And that includes Donaldson. That includes Seals. That includes Cherry's recantations. That includes the new affidavit from the victim's brother that says, well, the jewelry that I was shown was not the jewelry that I believe linked to the victim. All these facts. And if we take most of these or any of these as true, and we have to take them all as true, then a jury would be compelled to acquit. All we're asking for is a hearing. And I'd point out one more thing, Your Honor, which is we believe that that hearing should be in front of a new judge under people be raised in the case as cited at the end of our brief. The reason why is because Judge Gaunt in this case made an express credibility determination. The precedent is clear that when a court makes the kind of premature credibility determination, it should go before another judge on the matter. Judge Gaunt was the original trial judge. Yes, that's correct, Your Honor. In 1998. That is correct, Your Honor. That this is one of these things where even though there's a legislative preference for reassignment, the case law came down saying that for economy's sake, it should usually go back to the original trial judge. In this case, he's made a credibility determination. The precedent says that the case should not stay with him in that circumstance. So if we take Donaldson's statement that he fired at the victim's head with a .40 caliber or whatever it was as true, is it of such a conclusive character that that shot was the cause of the victim's death? It's clear from this trial that it's a single shot that caused the victim's death here. And he does expressly say, I'm the person responsible for taking the life. And the description is that it was a single shot while the victim was lying on the ground. Now, there's confusion because there's two bullet fragments that are discussed that are sometimes referred to as a bullet in the bullet fragment. But what's referred to as a bullet, if you look at Dr. Lipschitz, the M.E.'s testimony, is just the larger fragment of the bullet that still contains some of the jacket of the bullet. And then the second piece that gets talked about as bullet fragments is just a smaller piece of lead. But it's clear from the medical examiner's testimony that the natural inference of all this is that there's a single gunshot. And if somehow we came up with the theory that there's multiple gunshots, that two people must have shot at him simultaneously even though one wasn't present, that would undermine the State's entire theory of trial, which completely relied on the credibility of Rob and Sherry to describe what And I would point out, Your Honors, that this is effectively a single witness case to start with. And Rob and Sherry, you know, is a remarkably poor witness. She's terrified of McGee, her sometimes boyfriend, sometimes abuser, sometimes drug dealer, who's clearly putting pressure and trying to hide her in Iowa. At the same time, she's being told by detectives and State's attorneys that she's facing a life sentence even though she's only 12 at the time of offense and 12 or 13 at the time of that questioning. Her affidavits say, well, I told them what I thought I had to tell them what they wanted to. And when you look at what she comes up with in questioning, she keeps adding people, up to eight different people in the station wagons. The authorities end up not charging some of those because they turn out to be alibied. And, you know, unfortunately my client is the one that's left. And this is, you know, where, you know, we have this oddity about the reporter corroborating jury that, you know, there's this, even though the family describes an anchor charm, they end up presenting a ring that Sherry now says belonged to my client. And that is pretty darn credible when you consider that this ring that they identified is a six-point star ring with a G inscribed on the side, that it might make sense for a gangster to have, but there's no reason that an engineering student like Wes, who nobody believes is a gang member, would have. There was a push to get her to identify something, and she was telling authorities what they wanted to hear. All we're asking for right now is a hearing. Mr. Groove has already served decades in jail. We want a chance to give him a hearing to let, you know, these witnesses be found credible or not, and give him a chance, some chance to be able to get a free trial before his sentence is done. Thank you. We have five minutes to revote. State. Good morning, Your Honors. My name is Keleher on behalf of the people. May it please the Court. Defendant has failed to make a substantial showing of a colorable claim of actual innocence. Can you tell me what in the record contradicts the Seals affidavit? First of all, Robert Seals, when he did, he submitted two affidavits. By the time he submitted his affidavits, he had nothing to lose. His case was over with. So he was not in any jeopardy. But his affidavit, both were in the state that defendant was not present. However, that's positively rebutted by the record. And there's three pieces of evidence. So we go to the credibility of the Seals affidavit. And you can't do credibility at the second stage. I mean, the only thing it takes to defeat a second stage postconviction is to find some evidence in the record that contradicts. But that's not what's required. It has to show it's not true. And if he says the defendant wasn't present, then, you know, that makes, if it were a retrial, it would be his word against the people who, the one person who testified that he was there, or the two, I guess. It's correct that the trial court cannot make credibility determinations at the second stage. However, the trial court still has to make a determination of whether or not the new evidence, in this instance, Seals' affidavit, is of such conclusive character that it would likely change the result on retrial. And in order to make that determination, the first step is to consider the evidence that was introduced at trial. Well, taking your thesis to its logical conclusion, any time there is eyewitness testimony during a trial, there can never be a postconviction based on I wasn't there. Just that's all. I'm not saying that. I'm saying that each case has to be considered. What makes this case unique from that? Because in this case, we had the testimony of Robin Cherry, and we also have some corroborating evidence that corroborates her testimony. It's very strong evidence. And if I could just review the testimony briefly, Robin Cherry is someone who had known defendant for six years prior to this offense. So her ability to identify a defendant was never in question. She knew a defendant, and she knew some of these co-defendants. And she testified in detail how this offense was planned, how it was carried out. She testified in detail of the defendant's role, how he was one of the individuals who waited behind the victim's pathfinder while the victim was in the currency exchange. This is an innocent victim who was simply on his way to a friend's house to watch the Bulls game. But that's not my question. My question is, if you have eyewitness testimony identifying a defendant as the offender during the trial, how could you ever get post-conviction relief based upon an affidavit of an individual who says a man was not there? A man who was there, by the way. Seals. Well, as counsel mentioned, in effect, the trial court has to predict what another jury would do if it had heard all this evidence, including the proposed testimony of Robert Seals. So you have this testimony from Robin Cherry. You have Shirley West, which is the victim's mother, who identifies the ring at trial. She says this ring belonged to the victim. This ring just happened to be in the presence of defendant when he's arrested approximately a year and a half later. Defendant also, when he's arrested, has a bracelet. Shirley West testifies at trial that this bracelet belongs to my son, the 21-year-old victim. The victim's mother probably knows the jewelry better than anyone else. And then you have the cell phone records. The victim's cell phone was used shortly after the offense to make several calls. One of those calls was placed to a woman's house. Her name was Caroline Ferguson-Broadway, who had her daughter, Deirdre, happen to be the mother of the defendant's children. Now, is this just some wild coincidence that the victim's phone would be calling the... You're avoiding answering my question. How do these things totally negate the seal's affidavit? They certainly go to the credibility of the seal's affidavit, no question about it, but this is Second State, so credibility is decided. And you still have to take the seal's affidavit as true, unless it is contradicted by the record. And my argument is it is contradicted by the record because here we have the victim's testimony, and I'll point out, I'm sorry, Robin Cherry's testimony, and her recantation affidavit. She never recants the most essential parts of this case about her seeing defendant fire a bullet into the victim's head. She never recants any of this. Twenty-three years later, and she has ample opportunity to recant the entire story if she wanted to. She never does. In fact, it's interesting that, if anything, when you look at the big picture, and I think we have to look at everything here, they were afraid that Robin Cherry was going to go to the police. So Dwayne Taylor, he arranges for her to go to a separate apartment after the offense, but they're not even comfortable with that. They don't even want her in the Chicagoland area. So they make arrangements for her to go to Iowa, Des Moines, to live with Dwayne Taylor's sister. Now she's 300 miles away for a year. They're feeling better, but Cherry doesn't want to live like that. She doesn't want to keep this secret. She talks to her mother, and her mother buys her a bus ticket to come back to Chicago. And the first thing she does is she goes to the police, and she tells them what she had seen. She tells the truth. And she has never in 23 years recanted that. The only thing she has recanted. If this case were tried and Seals decided to testify, and testify in accordance with his affidavits, this is a he said, she said. It's a single eyewitness, Cherry, who has recanted portions of her testimony, believe that as we may, saying that this defendant shot the victim, shot Avery. And Seals saying he wasn't even present. A jury's got to make a decision as to which one they'll find credible. But you can't do it on a second stake. I don't understand. But the law still allows the trial court at second stage to determine whether it's of such conclusive character. Otherwise, anyone could just say he wasn't present, and you'd automatically get to a third stage on every case. Well, they do quite regularly. But if you're predicting what a jury would do, you have to weigh the evidence at trial. And here, it's not just a single witness case, as counsel wants us to believe. Cherry's testimony was corroborated by other indications, other evidence that defendant was present at the scene. Well, it was a possession of the victim's jewelry a year later. Which is significant. A year later? If it was the following day, that's a little bit different than a year later. Well, you have to look at the totality of the evidence and the circumstances. Now, the phone call, that was made shortly after. So there you have a situation where a phone call, and this is 1993, so most people didn't have cell phones, their own personal cell phones. So it's a reasonable inference that if the defendant wanted to contact the mother of his children, he would have to call the landline of the mother. He's trying to track her down. It's not like everyone was carrying a cell phone back then. So we can draw a reasonable inference that the defendant used the victim's cell phone after the offense, after he shot the victim, and tried to reach the mother of his children the best way he knew he could, by calling the landline at Carolyn Broadway's house. That's corroborating evidence. That corroborates that he was present. It positively rebuts Robert Sears' testimony that he was not present. And the jury can consider that Robert Sears. When was the telephone call made? I believe it was approximately 11 or 11.30 p.m. There were a number of calls, and then the phone abruptly went silent. The shooting was at what time? The shooting was in the evening. I don't know if there was an exact time in the record, but it was in the evening, and from my understanding of the record, the phone calls were made within a few hours of the shooting. And then the phone abruptly went dead. Mr. Kelleher, let me take Justice Hoffman's question and ask it a different way, because I think we're still dancing around his issue. We have this statutory process that recognizes the possibility of an actual innocence claim triggering a third stage post-conviction hearing. If the affidavit of Mr. Seals, who says, I swear that the defendant was not at the scene. I was at the scene, so I could see who was there, and he wasn't there. What then in the state's world is required to get to a third stage hearing on an actual innocence claim? What do we have missing here that we don't have? Well, Your Honor, each case has to be assessed on its own circumstances. Here, Robert Seals was a co-defendant. At the time he made the affidavit, he has nothing to lose, so he's trying to help out defendant. That's incredible. You have to take it as true. If you take it as true, what's missing? It's because you have Robert Seals saying that the defendant wasn't present, but Robin Cherry's testimony, which he has never recanted, says he was, and the other defaulting records corroborate that. I would argue even the fact that defendants found in possession of the ring supports the fact that he was present. Those are proceeds from the armed robbery. If you look at, I just mentioned, Coley Donaldson, this is another co-defendant. He doesn't even state that defendant's not present. He just states that defendant's not involved. So if you look at his testimony, his assertion that he fired a single shot from a .44 Magnum, according to Coley Donaldson's affidavit, defendant could have been standing right next to him. Don't you have to take the two affidavits together? Or do you get to argue against them each individually, as if the other didn't exist? I think you have to look at the totality of the evidence. The case indicates that you consider all the new evidence, all the old evidence, and it's significant that you have another co-defendant, Courtney Donaldson, who can say whatever he wants. He has no jeopardy, and he's not proclaiming in his affidavit that defendant wasn't present. No, he says the defendant wasn't involved, and Seals says the defendant wasn't present. So you put the two together, what do you got? If you take everything they say as true. Well, then you have to, the standard, it boils down to a probability standard. The standard is, is it such that it raises the probability that it is more likely that no reasonable juror would find defendant guilty in light of this new evidence. And I submit when you look at the testimony of Robin Cherry, when you look at the evidence about the phone call, about the mother's identification, about the ring and the bracelet, even if Courtney, Robert Donaldson, and Robert Seals had testified at trial, no reasonable jury is going to. Isn't Cherry recanting the things that you say corroborate that the defendant did it in the new affidavit? Yes, Your Honor. She, in Cherry's affidavit, it's very limited. It's limited to her identification of the ring, and it's limited to her identification of the gun. But Cherry would have only seen the ring for a short time, whereas the victim's mother would have seen that ring quite a bit. So if it's a question of how sure Cherry would have been able to identify that ring and how sure Shirley West, the victim's mother, would have been able to identify the ring, I think we've got to place much more weight on Shirley West's testimony. But even though Cherry did make this limited recantation, she never recanted any of the other stuff. And I would just – it's interesting. I think this Court needs to consider what led up – what events happened after trial. The defendant was pursuing Cherry, trying to get her to recant. He even had his own mother contact Cherry. He even – they even arranged an investigator. And at one point, the defendant, in his own affidavit, and I think this is significant, the defendant states that Cherry refused to speak with the investigator, stating she no longer wants to be involved with the case, and I know what happened. So this is Cherry telling the defendant, I don't want to speak with the investigator, I don't want to be involved in this case anymore, and you know what happened. Cherry is telling the defendant, you know what happened. That's why Cherry has never recanted her identification of defendant as the one who stood over the victim while he's face down on the ground and fired the gun, .38 caliber gun, not a .44 Magnum gun. So this is very compelling evidence that was produced at trial, and to get a co-defendant who has nothing to lose to say, well, you know, now 13 years after, I'm going to say, well, the defendant wasn't present. A jury is going to look at Cherry's testimony. The jury is going to look at Shirley West's testimony, identifying that ring. The jury is going to look at the cell phone records, and the jury is going to say, is it just a mere coincidence that this victim's phone was used to call Carolyn Ferguson Broadway? Broadway has nothing to do with this case. DeAndre has nothing to do with this case. Why would the victim's phone be used to call the grandmother of defendant's children shortly after this offense? And why a year and a half from the police arrest defendant the second time, he just happens to have two pieces of jewelry that the victim's mother identifies as belonging to the victim. So this is a very compelling evidence. And I think it's a very compelling evidence, and I think it's a very compelling evidence. Council, I think you've had your 15 minutes. We're going to give the defendant five minutes of record. Thank you. Based on all these reasons, as well as those in our brief, I think I respectfully request that this honorable court affirm the trial court's judgment. Thank you. Your Honor, in response to the evidence, somehow Donaldson's account is some late-breaking thing. Mr. Bruce tried to get into Donaldson's statements to police before trial. They were excluded on the State's own motion. Despite that, the State represented to the court below that Donaldson was not a new witness, even though they rendered him available for trial by their own motion. This is not late-breaking stuff. Donaldson has never placed my clients in this. Sure, he later invoked the Fifth, and it was only when that came out that we could actually get that. My client in 2010 could get his statement. Why was it excluded? It was a pretrial motion by the State to exclude Courtney Donaldson's statements to authorities where he implicated McGee and did not implicate McGee. You're talking very fast. I'm sorry, Your Honor. And I understand it was on the State's motion, but what was the jurisprudential basis that it was not admissible? It was that the State argued that he was a co-defendant and, therefore, likely to assert his Fifth Amendment rights. Because he would be unavailable to testify, the statements that did not implicate my client could not come into trial. So the notion that Donaldson is somehow a last-minute, there's no longer jeopardy, made-up idea is simply false and is completely refuted by the record, and I want to clarify that. Now, Justice Hoffman, as to your question about what do we do when there's co-defendant testimonies saying that the defendant's not present when compared to a State's witness at trial, I'd like to submit that the Illinois Supreme Court in Ortiz directly answered that question. Here is, I'm going to read from the Illinois Supreme Court's 2009 decision in Ortiz talking about the earlier decision in People v. Molstad. It talks about, at the Molstad trial, the State offered one eyewitness to testify the defendant was present during the crime. None of the co-defendants testified because of the risk of self-incrimination. The Illinois Supreme Court affirmed the appellate court's decision to vacate the defendant's conviction and remanded for a new trial on the basis of newly discovered evidence, and that newly discovered evidence was the affidavits of the co-defendants that the defendant was not present. This kind of framework has gone up and back to the Illinois Supreme Court, and when it's a remaining State's witness against co-defendants saying the defendant isn't present, in Molstad and Ortiz, the guy eventually got a new trial, all we're asking for is that chance at a hearing. And then on one final factional matter as to the cell phone call, Your Honor, and I wasn't able to find the precise time either, but I do recall it's some hours after the offense. The evidence of the record is that this was a phone number that was called. It was a phone number that people would call to try to get a hold of Bruce, so that would refute the inference that this was somehow Bruce using the stolen phone to call home. It was somebody using the stolen phone to try to call Bruce, which, if anything, would suggest that Bruce was not there, as Seals and Donaldson now say. Thank you, Your Honors. Counsel's, thank you. The matter will be taken under advisory with the decision to issue this court's adjournment.